IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case No. 4:21-CR-289-O |
| | § | |
| v. | § | |
| | § | |
| HOLLIS GREENLAW (01) | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**REPLY IN SUPPORT OF MOTION OF DEFENDANT HOLLIS GREENLAW
FOR CONTINUED RELEASE PENDING APPEAL**

## TABLE OF CONTENTS

Page

Introduction ..........................................................................................................................1

Argument .............................................................................................................................1

    I.      Mr. Greenlaw is neither a flight risk nor a danger to others ....................................1

    II.     Mr. Greenlaw's appeal presents substantial legal questions that, if decided
            in his favor, are likely to result in reversal or a new trial ........................................2

         A.     There is a substantial question concerning the existence of a
               'scheme to defraud' and 'intent to defraud' that, if decided in Mr.
               Greenlaw's favor, is likely to result in reversal or a new trial .....................2

         B.     Whether the government elicited sufficient evidence of falsity is a
               substantial question that, if decided in Mr. Greenlaw's favor, is
               likely to result in reversal............................................................................7

Conclusion ...........................................................................................................................9

## TABLE OF AUTHORITIES

### CASES

*United States* v. *Baker*, 923 F.3d 390 (5th Cir. 2019),
    *cert. denied*, 140 S. Ct. 2565 (2020).......................................................................3

*Boyde* v. *California*, 494 U.S. 370 (1990) .......................................................................7

*United States* v. *Connolly*, 24 F.4th 821 (2d Cir. 2022) ..................................................8

*United States* v. *Copeland*, 820 F.3d 809 (5th Cir. 2016) ...............................................6

*United States* v. *Evans*, 892 F.3d 692 (5th Cir. 2018) ....................................................4

*United States* v. *Farran*, 611 F. Supp. 602 (S.D. Tex. 1985),
    *aff'd*, 784 F.2d 1111 (5th Cir.), *cert. denied*, 476 U.S. 1144 (1986) ......................2

*United States* v. *Fooladi*, 746 F.2d 1027 (5th Cir. 1984) ...............................................3

*Kelly* v. *United States*, 140 S. Ct. 1565 (2020) ...............................................................4

*United States* v. *Mahaffy*, 693 F.3d 113 (2d Cir. 2012) ..................................................7

*United States* v. *Miller*, 953 F.3d 1095 (9th Cir. 2020),
    *cert. denied*, 141 S. Ct. 1085 (2021).....................................................................4, 5

*United States* v. *Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994),
    *cert. denied*, 513 U.S. 1084 (1995).........................................................................5

Page

Cases—continued:

*United States* v. *Peterson*, 977 F.3d 381 (5th Cir. 2020)..................................................................3

*United States* v. *Ratcliff*, 488 F.3d 639 (2007) ...................................................................................3

*United States* v. *Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970)....................................4

*United States* v. *Sadler*, 750 F.3d 585 (6th Cir. 2014)........................................................................5

*United States* v. *Scully*, 951 F.3d 656 (5th Cir. 2020),
    *cert. denied*, 141 S. Ct. 344 (2020) .............................................................................................7

*Shaw* v. *United States*, 137 S. Ct. 462 (2016)...................................................................................3

*United States* v. *Shellef*, 507 F.3d 82 (2d Cir. 2007) ........................................................................4

*United States* v. *Skilling*, 638 F.3d 480 (5th Cir. 2011)...................................................................7

*United States* v. *Starr*, 816 F.2d 94 (2d Cir. 1987)...........................................................................4

*United States* v. *Takhalov*, 827 F.3d 1307,
    *reh'g denied*, 838 F.3d 1168 (11th Cir. 2016) .......................................................................4, 5

*United States* v. *Valera-Elizondo*, 761 F.2d 1020 (5th Cir. 1985)..................................................2

*United States* v. *Velasquez*, 881 F.3d 314 (5th Cir. 2018)...............................................................7

*United States* v. *Whitfield*, 590 F.3d 325 (5th Cir. 2009) ................................................................3

*United States* v. *Yates*, 16 F.4th 256 (9th Cir. 2021) .......................................................................5

## STATUTE

18 U.S.C. § 1348(1) .................................................................................................................7, 8

## OTHER AUTHORITIES

Committee on Federal Criminal Jury Instructions of the Seventh Circuit,
    *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh*
    *Circuit* 541 (2020).........................................................................................................................4

Committee on Model Criminal Jury Instructions (Third Circuit), *Model Criminal*
    *Jury Instructions* § 6.18.1341-1 (2021) ................................................................................3, 4

Criminal Pattern Jury Instruction Committee of the United States Court of
    Appeals for the Tenth Circuit, *Criminal Pattern Jury Instructions*
    § 2.57 (2021)..................................................................................................................................4

Page

Other authority—continued:

Sixth Circuit Committee on Pattern Criminal Jury Instructions, *Pattern Criminal Jury Instructions* § 10.02(2) (2021) ......................................................................................... 4

## INTRODUCTION

The government concedes that Mr. Greenlaw is not a danger to others and is not pursuing this appeal for the purpose of delay. The government's arguments that he does not satisfy the other requirements for release pending appeal are all unavailing; indeed, the government largely ignores the authorities and evidence cited in his motion.

*First*, it is nonsensical to call Mr. Greenlaw a flight risk after he was released without incident for virtually the entire trial and sentencing proceedings while facing the possibility of life in prison, simply because a sentence of seven years has now been imposed. That argument also flies in the face of this Court's decision to impose a voluntary surrender date rather than immediately remanding Mr. Greenlaw into custody.

*Second*, Mr. Greenlaw will raise at least two substantial questions on appeal that, if decided in his favor, are likely to result in reversal. As to the first question, the government disputes Mr. Greenlaw's interpretation of "scheme to defraud" and "intent to defraud," but it does not rebut the substantial legal authority adopting a contrary interpretation or identify any evidence that would satisfy those elements of every count of conviction. As to the second question, the government once again fails to identify a single materially false or misleading statement made to UDF investors.

For those reasons, the Court should grant Mr. Greenlaw continued release pending appeal.

## ARGUMENT

**I.   MR. GREENLAW IS NEITHER A FLIGHT RISK NOR A DANGER TO OTHERS**

As the Court implicitly recognized when it permitted Mr. Greenlaw voluntarily to surrender, he poses no risk of flight or danger to others. *See* Dkt. 467, at 2. The government does not dispute that Mr. Greenlaw is a devoted husband and father with deep ties to the community or that he has no criminal history. *See* Mot. 2-3. The government instead rests its argument on the illogical proposition that he would flee because he now has "certainty" that he faces seven years in

(1)

prison. Resp. 4. But Mr. Greenlaw was released during virtually the entire trial and sentencing proceedings, during which time he faced a sentence that could effectively amount to life in prison. *See* Dkt. 354-1, ¶ 98. It is absurd to suggest that he would now flee. *See, e.g.*, *United States* v. *Farran*, 611 F. Supp. 602, 605 n.1 (S.D. Tex. 1985), *aff'd*, 784 F.2d 1111 (5th Cir.), *cert. denied*, 476 U.S. 1144 (1986).

II. **MR. GREENLAW'S APPEAL PRESENTS SUBSTANTIAL LEGAL QUESTIONS THAT, IF DECIDED IN HIS FAVOR, ARE LIKELY TO RESULT IN REVERSAL OR A NEW TRIAL**

The government must do more than establish that Mr. Greenlaw's conviction might be affirmed on appeal; it must rebut his argument that there is "substantial doubt" on at least one appellate issue and that a favorable decision would likely result in reversal. *United States* v. *Valera-Elizondo*, 761 F.2d 1020, 1024 (5th Cir. 1985). Mr. Greenlaw has adequately established substantial doubt as to the sufficiency of the evidence of a "scheme to defraud" and "intent to defraud," as well as the jury instructions defining those terms. He has also established substantial doubt as to the existence of any materially false or misleading statement. And a favorable decision on either of those issues is likely to result in reversal on appeal.

A. **There Is A Substantial Question Concerning The Existence Of A 'Scheme To Defraud' And 'Intent To Defraud' That, If Decided In Mr. Greenlaw's Favor, Is Likely To Result In Reversal Or A New Trial**

The government concedes that both wire fraud and securities fraud have as an element a "scheme to defraud," an "intent to defraud," or both. *See* Resp. 18-19; *see also* Mot. 4. The government instead argues that it proved a "scheme to defraud" and an "intent to defraud" by proving that Mr. Greenlaw had a purpose of *either* deceiving investors (with the intent of benefitting financially by doing so) *or* depriving them of money. *See* Resp. 6-12. But that argument

2

ignores multiple decisions of the Supreme Court, Fifth Circuit, and other courts of appeals recognizing that *both* deception *and* deprivation are required. Furthermore, the government identifies no evidence that Mr. Greenlaw acted with the purpose of depriving investors of money.

1. The government simply ignores multiple binding precedents interpreting "scheme to defraud." It fails to address *Shaw* v. *United States*, 137 S. Ct. 462 (2016), in which the Supreme Court explained that a scheme to defraud "must be one to deceive [the victim] and deprive it of something of value." *Id.* at 469; *see* Mot. 5. And it likewise does not address *United States* v. *Ratcliff*, 488 F.3d 639 (2007), in which the Fifth Circuit held that mere deception was insufficient to prove the existence of a scheme to defraud. *See id.* at 645; Mot. 6. Those authorities are sufficient, by themselves, to raise a substantial question as to whether a "scheme to defraud" requires proof of deceit *and* deprivation.

The government primarily relies on the fact that this Court used the Fifth Circuit Pattern Jury Instructions. *See* Resp. 9. As Mr. Greenlaw explained in his motion—citing a Fifth Circuit decision that the government also fails to discuss—the pattern instructions "do not themselves have the force of law" and are entitled to no deference. *United States* v. *Peterson*, 977 F.3d 381, 390 n.2 (5th Cir. 2020); *see also United States* v. *Fooladi*, 746 F.2d 1027, 1031 (5th Cir. 1984). Even a charge modeled on a pattern instruction must still be "a correct statement of the law." *United States* v. *Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citation omitted). And the Fifth Circuit's approval of a different aspect of the pattern instruction in *United States* v. *Baker*, 923 F.3d 390 (2019), *cert. denied*, 140 S. Ct. 2565 (2020), does not mean that every aspect of the instruction is substantively correct. *See* Mot. 6.[1]

---

[1] The government's summary of the pattern jury instructions in the Third, Sixth, Seventh, and Tenth Circuits also misleadingly reads the definition of "intent to defraud" in isolation. *See* Resp. 6 n.4. Although those pattern instructions do use the disjunctive formulation to define "intent to defraud," they all require a purpose of depriving another of money or property as part of their definition of a "scheme to defraud." *See* Committee on Model Criminal Jury Instructions (Third

3

The government also purports to distinguishes the decision in *Kelly* v. *United States*, 140 S. Ct. 1565 (2020), on its facts. *See* Resp. 10. But the Supreme Court squarely held that the defendants "could not have violated the . . . wire fraud laws" because "the scheme . . . did not aim to obtain money or property." 140 S. Ct. at 1574. So too here, Mr. Greenlaw's convictions cannot be sustained if the scheme to defraud involved mere deception.

The government similarly tries to distinguish the Eleventh Circuit's decision in *United States* v. *Takhalov*, 827 F.3d 1307, *reh'g denied*, 838 F.3d 1168 (2016), based on the posture of that case. *See* Resp. 7. But the government offers no direct response to the Eleventh Circuit's discussion of the fundamental point—applicable both in *Takhalov* and this case—that "deceiving is a necessary condition of defrauding but not a sufficient one." 827 F.3d at 1312; *see also* Mot. 7. Based on that definition, the court unambiguously recognized that "[a] jury cannot convict a defendant of wire fraud . . . based on 'misrepresentations amounting only to a deceit.'" 827 F.3d at 1314 (quoting *United States* v. *Shellef*, 507 F.3d 82, 108 (2d Cir. 2007)).

2. The government offers little additional argument as to why the evidence of "intent to defraud" is not a substantial question. Mr. Greenlaw laid out significant authority explaining that an "intent to defraud" must involve "an intent to (1) deceive, and (2) cause some harm to result from the deceit." *United States* v. *Evans*, 892 F.3d 692, 712 (5th Cir. 2018) (citation omitted); *see also United States* v. *Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085 (2021); *United States* v. *Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *United States* v. *Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970). The government does not address any of those decisions except *Miller*, and its comparison to that case is unpersuasive. In *Miller*, the "scheme to

---

Circuit), *Model Criminal Jury Instructions* § 6.18.1341-1 (2021); Sixth Circuit Committee on Pattern Criminal Jury Instructions, *Pattern Criminal Jury Instructions* § 10.02(2) (2021); Committee on Federal Criminal Jury Instructions of the Seventh Circuit, *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* 541 (2020); Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, *Criminal Pattern Jury Instructions* § 2.57 (2021).

defraud" instruction was a correct statement of the law because it required the jury to find that the defendant "knowingly engaged in a scheme or plan to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises." 953 F.3d at 1103. By contrast, the scheme-to-defraud instruction in this case allowed the jury to convict without any evidence of harm to an investor. *See* Mot. 5-7; pp. 5-6, *infra*.

3. The government introduced no evidence that Mr. Greenlaw acted with the purpose or intent of depriving any investor of money. The government's experts admitted that they did not consider the benefits that flowed to UDF investors as result of the common-borrower transactions, and significant evidence was presented at trial demonstrating those benefits. *See* Mot. 7-8. In its response, the government nowhere disputes that those benefits accrued to UDF investors.

The government argues that investors were "deprived" of the "right to decide whether or not to invest in the [UDF] funds based on the facts about how their money would be used." Resp. 8. But a breach of the "ethereal right to accurate information" is not a deprivation of property under the federal fraud statutes. Mot. 8-9 (quoting *United States* v. *Sadler*, 750 F.3d 585, 591 (6th Cir. 2014)); *see also United States* v. *Yates*, 16 F.4th 256, 265 (9th Cir. 2021); *Takhalov*, 827 F.3d at 1314; *United States* v. *Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994), *cert. denied*, 513 U.S. 1084 (1995). The government does not address the cases cited by Mr. Greenlaw on this point, and it cites no cases holding that a right to accurate information is a property right.

The government also argues that "investors were misled into purchasing a stock that was not actually worth what they paid for it." Resp. 8-9. The government does not dispute the dispositive facts that UDF III investors received the distributions and UDF IV and UDF V received equivalent value for each transaction. *See* Mot. 8; Trial Tr. Vol. 6, at 1251:3-1251:6 (Scott Mar-

5

tinez); Trial Tr. Vol. 7, at 1175:19-1176:1, 1182:2-1182:5, 1195:15-1195:23 (Dale Kitchens). Indeed, the government's experts admitted at trial that they failed to assess the value of those benefits. *See* Mot. 7-8; Trial Tr. Vol. 7, at 1267:22-1268:14 (Martinez), 1380:12-1380:14 (Carocci).

The government further argues that the transfers among UDF III, UDF IV, and UDF V are evidence of a scheme to defraud and intent to defraud. *See* Resp. 10-11, 21-22. But by focusing on the "source" of the funds used to pay distributions to UDF III investors, the government misses the point: UDF III, UDF IV, and UDF V investors were not deprived of any money as a result of the common-borrower transactions. *See* Mot. 8. For those reasons, there is a substantial question whether the government introduced sufficient evidence of a scheme to defraud and intent to defraud.

4. At the very least, Mr. Greenlaw has demonstrated that his convictions are likely to be vacated because of a related instructional error in the definition of "scheme to defraud" and "intent to defraud." *See* Mot. 9-10. The government has not addressed the substantial legal authority requiring proof of a purpose to deceive *and* cheat, *see* pp. 3-4, *supra*, and it has not identified any evidence that would make the instructional error harmless beyond a reasonable doubt, *see* pp. 5-6, *supra*.

The government is incorrect that the applicable standard of review is "exceedingly deferential." Resp. 5. Although the abuse-of-discretion standard generally applies to the decision whether to give a jury instruction, the Fifth Circuit reviews questions of law concerning jury instructions *de novo*. *See, e.g.*, *United States* v. *Copeland*, 820 F.3d 809, 811 (5th Cir. 2016). Mr. Greenlaw's argument about the meaning of "scheme to defraud" and "intent to defraud" is unquestionably a legal one subject to *de novo* review.

Nor was any error harmless simply because the government argued to the jury that "a scheme to defraud means a plan, pattern, or course of action intended to deprive another of money

6

or property and intended to bring about some financial gain to the person engaged in the scheme." Resp. 11-12. It is black-letter law that "[j]uries are presumed to follow their instructions." *United States* v. *Velasquez*, 881 F.3d 314, 341 (5th Cir. 2018) (citation omitted); *see also Boyde* v. *California*, 494 U.S. 370, 384 (1990). There is no reason to think that the jury disregarded the instructions given by this Court and instead adopted a legal rule advanced in passing by the government in its closing statement. Because the "record contains evidence that could rationally lead to [an acquittal]" if the proper instructions were given, *United States* v. *Skilling*, 638 F.3d 480, 482 (5th Cir. 2011) (alteration in original; internal quotation marks and citation omitted), the Fifth Circuit is likely, at minimum, to vacate all of Mr. Greenlaw's convictions and remand for a new trial.

> **B.** **Whether The Government Elicited Sufficient Evidence Of Falsity Is A Substantial Question That, If Decided In Mr. Greenlaw's Favor, Is Likely To Result In Reversal**

Mr. Greenlaw has also identified a substantial question regarding the sufficiency of the evidence of a false or misleading statement that, if decided in his favor, is likely to result in reversal. The government does not contend that it produced evidence of a false or misleading statement concerning UDF IV. *See* Resp. 21-22; *see also* Mot. 10. The government does defend the sufficiency of the evidence of a false or misleading statement regarding UDF III and (cursorily) UDF V, but there is substantial doubt regarding the sufficiency of the evidence, and the Fifth Circuit is likely to reverse all of Mr. Greenlaw's convictions on that basis as well.

As an initial matter, the government's argument that Section 1348(1) does not require proof of a false statement is beside the point. *See* Resp. 19. The very case the government cites for that proposition recognized that Section 1348(1) requires a "scheme . . . to defraud." *United States* v. *Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012). A "scheme to defraud," in turn, requires at least "some kind of a false or fraudulent material misrepresentation." *United States* v. *Scully*, 951 F.3d 656, 671 (5th Cir. 2020) (citation omitted), *cert. denied*, 141 S. Ct. 344 (2020). At a minimum,

7

then, Section 1348(1) requires evidence of a misleading statement. *See United States* v. *Connolly*, 24 F.4th 821, 833-834 (2d Cir. 2022).

The government has identified no such false or misleading statement with respect to UDF III. It rehashes with little elaboration its argument that UDF III's SEC filings misrepresented the source of distributions paid to investors as "cash" from "operations," Resp. 21, which the government defined at trial as "interest the developers were paying back on . . . loans," Trial Tr. Vol. 2, at 5:5-5:10. The government does not respond to Mr. Greenlaw's explanation that UDF III's disclosures placed no limitations on the funds that could be used to pay distributions. *See* Mot. 11. In any event, UDF III's disclosures were consistent with the government's definition of "cash" from "operations" because UDF IV and UDF V advanced funds to borrowers that they had in common with UDF III, which enabled those borrowers to make progress toward development and repay UDF III loans with interest. *See* Mot. 11-12; Trial Tr. Vol. 6, at 1383:4-1383:9 (Thomas Carocci). The government also does not address Mr. Greenlaw's evidence that UDF III had sufficient funds to cover distributions even without the common-borrower transactions, *see* Mot. 11-12; Trial Tr. Vol. 7, at 1191:7-1191:19 (Kitchens); UDF III disclosed its illiquidity, *see* Mot. 12; Def. Ex. 64, at 32; UDF III disclosed that it might "declare distributions in excess of available cash," *see* Mot. 12; Trial Tr. Vol. 6, at 1387:13-1387:25 (Carocci); and UDF III disclosed that it constantly deployed its capital so that there would be no idle cash, *see* Mot. 12; Trial Tr. Vol. 7, at 1235:1-1237:19 (Jeff Ferguson). The government acknowledges that the advances on UDF IV and UDF V loans were made to the "same developers" that had borrowed from UDF III, Resp. 21, but it fails to explain how those transactions support the conclusion that UDF III made a false or misleading disclosure.

With respect to UDF V, the government suggests in passing that UDF V made a materially false or misleading statement that it would not engage in "affiliate transactions." Resp. 22. Even

8

if that brief reference adequately raised the issue, the government fails to discuss Mr. Greenlaw's evidence that UDF V disclosed that it might "invest in multiple mortgage loans that share a common borrower." Def. Ex. 121, at 36; Def. Ex. 128, at 18; Def. Ex. 135, at 19; Def. Ex. 139, at 19; *see* Mot. 12-13. Nor does the government contend that any transaction lacked a common borrower. *See* Mot. 13; *see also* Trial Tr. Vol. 6, at 1383:4-1383:7 (Carocci). There is thus a substantial question regarding the sufficiency of the evidence of a false or misleading statement. And if the Fifth Circuit were to decide that question in Mr. Greenlaw's favor, it would likely reverse all of his convictions.[2]

## CONCLUSION

Mr. Greenlaw's motion for continued release pending appeal should be granted.

Dated: June 10, 2022

Respectfully submitted,

/s/ Paul E. Pelletier
Paul E. Pelletier
District of Columbia Bar No. 997145
3500 Morningside Drive
Fairfax, VA 22031
202.617.9151
pepelletier3@gmail.com

/s/ Rose L. Romero
Rose L. Romero
Texas Bar No. 17224700
Law Offices of Romero | Kozub
235 N.E. Loop 820, Suite 310
Hurst, Texas 76053
682.267.1351
Rose.Romero@romerokozub.com

*Attorneys for Defendant Hollis Greenlaw*

---

[2] Mr. Greenlaw incorporates by reference the arguments made by Benjamin Wissink, Cara Obert, and Brandon Jester in their motions for release pending appeal.

9

**CERTIFICATE OF SERVICE**

I, Rose Romero, counsel for defendant Hollis Greenlaw, certify that, on June 10, 2022, the foregoing document was filed through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Rose L. Romero
ROSE L. ROMERO